**FIDELITY NATIONAL LAW GROUP**
SHERI M. KANESAKA (SBN 240053)
4 Executive Circle, Suite 270
Irvine, California 92614
Telephone: (949) 255-9943
Facsimile: (213) 438-4417
Email: Sheri.Kanesaka@fnf.com

Attorneys for Secured Creditor
FIDELITY NATIONAL TITLE
INSURANCE COMPANY

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA (SANTA ANA)

| | |
|---|---|
| In re STEPHEN NGUYEN, | CASE NO. 8:18-bk-13394-TA |
| Debtor. | Chapter 13 |
| | Hon. Theodor Albert |
| | **MOTION TO DISMISS BANKRUPTCY CASE WITH PREJUDICE, OR ALTERNATIVELY, WITH A 180 DAY BAR TO REFILING** |
| | [11 U.S.C. §§ 109(e) and (g), 349, 1307] |
| | *[Request for judicial notice and Declarations of David Cohen, Thomas Robles, Matt Semple, and Sheri Kanesaka filed concurrently herewith]* |
| | Date: November 14, 2018<br>Time: 3:00 p.m.<br>Place: Courtroom 5B, 5th Floor |

**TO THE HONORABLE THEODORE ALBERT, UNITED STATES BANKRUPTCY JUDGE, THE CHAPTER 13 TRUSTEE, AND ALL PARTIES REQUIRING NOTICE:**

Secured creditor Fidelity National Title Insurance Company ("Fidelity Insurance") respectfully moves this Court for an order (1) dismissing this case with prejudice pursuant to 11 U.S.C. § 1307(c) and 349(a), or, in the alternative, (2) dismissing the case with a 180 day bar to refiling.

1

## I. INTRODUCTION

This case is a prime example of bad faith filing by a debtor. The debtor here, Stephen Nguyen ("Debtor"), failed to disclose a number of other real properties, debts, transfers, and lawsuits involving him in his bankruptcy Schedules and Statement of Financial Affairs that he signed under penalty of perjury as to the truth and accuracy therein. As detailed below, the Debtor failed to disclose:

- **Three** other real properties that Fidelity Insurance is aware of which the Debtor owns or has interests in
- **Nine** loans that are/were secured by the real properties—two of which relate to the subject property
- **Two** transfers affecting real property made within one year of the bankruptcy filing
- **One** foreclosure of real property within the past year
- **Six** lawsuits in which he is a defendant, cross- complainant and/or cross-defendant, including one action involving Fidelity Insurance and in which the Debtor is the cross-complainant.

In sum, the Debtor's secured debts (both disclosed and undisclosed) with regard to all of the known properties total **$2,650,296.37** (this includes amounts that would be undersecured or unsecured due to lack of equity in the properties[1]). The Debtor's unsecured *undisclosed* debts with regard to all of the known properties total **$600,000.00**. This failure to disclose all assets, debts, and transfers is sufficient to establish cause for dismissal with prejudice.

Moreover, other characteristics evidencing a bad-faith Chapter 13 case are present. The Debtor filed the bankruptcy one day before Fidelity Insurance's foreclosure sale and after the Debtor failed to obtain a preliminary injunction in the state court proceeding. The Debtor's Chapter 13 plan has no hope of confirmation as the Debtor's sole source of income is the rental properties which he over-encumbered with loans that he is now in default under. The Debtor is also accused of serious

---

[1] A calculation of the secured and unsecured debts as determined for eligibility purposes is also provided below.

2

fraud and conversion regarding real estate transactions in which, among other things, it appears he "pumped" and "dumped"—took out all the equity in the properties and then sold the properties to unsuspecting buyers in the Asian community with the liens still encumbering the properties.

The Debtor's actions are clearly egregious and warrant dismissal with prejudice.

In the alternative, and as the Debtor is over the debt limits for a Chapter 13 case, Fidelity Insurance respectfully requests that the Court dismiss this case with a 180 day bar to refiling.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The Jerome Property and Liens Against the Property

On or about May 16, 2014, the Debtor's entity, Met Green, Inc., acquired title to the real property located at 12282 Jerome Street, Garden Grove, CA 92841 ("Jerome Property"). *See* Request for Judicial Notice filed concurrently herewith ("RJN"), Ex. 1.

Subsequently, on or about June 2, 2015, title was transferred to the Debtor pursuant to a grant deed. RJN Ex. 2. On or about December 10, 2015, the Debtor borrowed $475,000.00 ("Puerto Loan") from Puerto Escondido LLC ("Puerto"). RJN Ex. 3. Repayment of the Puerto Loan is secured by a deed of trust on December 10, 2015, recorded against title to the Jerome Property as Document #2015000625943 ("Puerto DOT"). *Id.*

On or about January 11, 2017, the Debtor obtained a refinance of $600,000.00 ("Cohen Loan") from secured creditors David P. Cohen and Summer L. Cohen, Incumbent Trustees of the Cohen Living Trust Under Declaration Dated July 1, 2002 (collectively, the "Cohens"). *See* Declaration of David Cohen ("Cohen Decl."), ¶ 2. Repayment of the Cohen Loan is secured by a deed of trust recorded on January 11, 2017 ("Cohen DOT"). *Id.*;RJN Ex. 4. The Cohen Loan was provided to the Debtor on the basis that the Cohens would have a senior lien interest against title to the Jerome Property pursuant to the Cohen DOT, with the loan proceeds paying off the Puerto Loan. Cohen Decl., ¶ 4. The Debtor represented to the Cohens that the Jerome Property was an investment property and not his personal residence. *Id.* at ¶ 3.

In connection with the Cohen Loan, escrow was opened with AmeriLink Escrow Inc. ("AmeriLink") (believed to be in concert with the Debtor). *See* Declaration of Thomas Robles ("Robles Decl."), ¶¶ 2-5. AmeriLink retained Fidelity National Title Company ("Fidelity Title") to

perform limited tasks as a sub-escrow agent. *Id.* at ¶ 5. Specifically, AmeriLink requested Fidelity Title to work with an underwriter to obtain a title policy for the Cohens. *Id.* AmeriLink also specifically instructed Fidelity Title, in writing, to transfer the loan proceeds of the Cohen Loan to AmeriLink because AmeriLink would handle the payoff of the Puerto Loan with the Cohen Loan proceeds. Robles Decl., ¶ 6.

Accordingly, on or about January 12, 2017, Fidelity Title wired $586,494.20 (the loan proceeds minus the title fees and supplemental taxes) to AmeriLink. *Id.* at ¶ 7. Fidelity Title had no involvement with the funds or the escrow once it complied with AmeriLink's instructions and transferred the funds to AmeriLink. *Id.* at ¶ 9. During the course of Fidelity Title's limited involvement, Fidelity Title never received any instructions or correspondence from either the Cohens or the Debtor, and only received instructions from AmeriLink. *Id.* at ¶ 10.

In connection with the Cohen Loan, Fidelity Insurance issued a title policy to the Cohens insuring the Cohen DOT as a senior lien against the Jerome Property. *Id.* at ¶ 8.

Fidelity Title is informed and believes that instead of paying off the Puerto Loan, AmeriLink cancelled the check made out to Puerto and instead disbursed $50,000.00 to the Debtor, $96,250.00 to a Vivian Nguyen, and $124,750.00 to a Ngoc T. Do. *Id.* at ¶ 12. Although the $50,000.00 was significantly less than the $74,272.78 that the Debtor was supposed to receive pursuant to the refinance, it appears that the Debtor suspiciously said nothing and did nothing to alert anyone of this discrepancy. The Puerto Loan was not paid off and Puerto did not reconvey the Puerto DOT. *See* Declaration of Matt Semple ("Semple Decl."), ¶ 6.

In or about January, 2017, the Debtor further encumbered the Jerome Property by borrowing $200,000.00 from Lieu Thi Huynh ("Huynh") secured by a deed of trust recorded on January 18, 2017 ("Huynh DOT"). RJN Ex. 5.

In or about July 2017, the Cohens contacted Fidelity Title with their concerns that the Cohen DOT may not be in first lien position against title to the Jerome Property. Robles Decl., ¶ 11; Cohen Decl., ¶ 9. The Cohens were concerned because the Debtor had only made three payments under the Cohen Loan. Cohen Decl., ¶ 9. On July 21, 2017, the Cohens recorded a notice of default under the Cohen DOT. RJN Ex. 6; Cohen Decl., ¶ 10.

4

MOTION TO DISMISS BANKRUPTCY CASE WITH PREJUDICE, OR ALTERNATIVELY, WITH A 180 DAY BAR TO REFILING

The Cohen Loan has been in default since June, 2017. Cohen Decl., ¶ 7. The regular monthly payments under the Cohen Loan is $8,008.94. *Id.* The principal amount due and owing on the Cohen Loan as of September 12, 2018 is $599,949.84. *Id.* Property taxes have not been paid, in the amount of $25,677.29, and will come due again soon. *Id.* The unpaid payments, fees, and insurance since June, 2017 to cure the defaults under the loan is approximately $148,916.82 as of September 12, 2018. *Id.* The total amount due and owing as of September 12, 2018 is approximately **$751,874.46**. *Id.*

On or about January 5, 2018, Puerto recorded a notice of default and election to sell under the Puerto DOT. RJN Ex. 7. Because the Puerto DOT was recorded prior to the Cohen DOT, if Puerto foreclosed, it would wipe out the Cohens' security interests in the Jerome Property. Semple Decl., ¶ 7. Accordingly, in or about February 2018, Fidelity Insurance purchased the Puerto Loan and DOT. *Id.* at ¶ 8; RJN Ex. 8.

On or about April 2, 2018, Fidelity Insurance substituted in Fidelity Title as the trustee under the Puerto DOT. Robles Decl., ¶ 14; RJN Ex. 9. Also on April 2, 2018, Fidelity Title recorded a notice of default with regard to the Puerto DOT as the Puerto Loan was never paid off. Robles Decl., ¶ 16; RJN Ex. 10.

On July 11, 2018, Fidelity Title recorded a notice of trustee's sale with a foreclosure sale of August 2, 2018. Robles Decl., ¶ 17; RJN Ex. 11.

One day before the August 2nd sale date, the Debtor sought and obtained a temporary restraining order ("TRO") in the State Court Action (defined below). *See* Declaration of Sheri Kanesaka ("Kanesaka Decl."), ¶ 8. The sale was continued to September 13, 2018; however, after the state court denied the Debtor's request for a preliminary injunction, and one day before the sale, the Debtor provided Fidelity Insurance with notice that he had just filed bankruptcy. Robles Decl., ¶ 18; Kanesaka Decl., ¶¶ 9-10. The sale is now pending for October 30th. Kanesaka Decl., ¶ 11. The total approximate amount due under the Puerto Loan as of September 12, 2018, is **$567,642.91**. Semple Decl., ¶ 11.

The Debtor admits in the State Court Action (defined below) that the Puerto Loan was never paid off and remains a valid debt which the Debtor is unable to pay and is now in default. RJN Ex.

5

12 [First Amended Cross-Compliant ("FACC"), ¶ 22]. The Debtor listed the Puerto Loan on his bankruptcy Schedule D but not as contingent or disputed. The Debtor's Chapter 13 plan ("Plan") also provides for curing the arrears under the Puerto Loan (albeit, for a far lesser amount).

However, the Debtor **failed to disclose** the Cohen Loan and DOT, or the other secured lien (Huynh DOT). Therefore, the total liens against the Jerome Property, including the debts omitted by the Debtor, are as follows:

| | |
|---|---|
| Cohen DOT | $ 751,874.46 |
| Puerto DOT | $ 567,642.91 |
| Huynh DOT | $ 200,000.00 |
| Solar panels | $ 96,779.00 (listed by the Debtor on Schedule D) |
| **Total:** | **$ 1,616,296.37** |

Pursuant to Schedule D, the Debtor's lists the current value of the Jerome Property at $842,130.00. Thus, the total amount of the undersecured or unsecured portions of the secured liens is approximately **$774,166.37**.

### B. The 11451 Mac St. Garden Grove Property

Pursuant to the Debtor's representations in his cross-complaint ("Cross-Complaint") filed in the State Court Action (defined below), the Debtor is also the owner of real property commonly known as 11451 Mac Street, Garden Grove, CA ("Mac Property"). RJN Ex. 13 [Cross-Complaint, ¶ 22]. The Debtor contends that AmeriLink failed to pay off an existing $584,000.00 loan when he refinanced the Mac Property with a new $350,000.00 loan, causing there to exist two mortgages and two monthly payments that he could not pay. *Id.* [Cross-Complaint, ¶¶ 23-25]. The Debtor admits he is in default on the loans. *Id.* [Cross-Complaint, ¶ 25]. In sum, the total amount of the liens against the Mac Property as alleged by the Debtor is **$934,000.00**.

The Debtor **failed to disclose** the Mac Property or his debts with regard to the property on his bankruptcy Schedules.

///

///

///

### C. The 13351 Mc Evoy Lane, Garden Grove Property

The Debtor also alleged in his Cross-Complaint that he is the owner of real property commonly known as 13351 Mc Evoy[2] Lane, Garden Grove, CA ("Mc Evoy Property"). RJN Ex. 13 [Cross-Complaint, ¶ 26]. The Debtor alleged that AmeriLink failed to pay off an existing $292,500.00 loan when he refinanced the Mc Evoy Property with a new $350,000.00 loan, causing there to exist two mortgages and two monthly payments that he could not pay. *Id.* [Cross-Complaint, ¶¶ 27-28]. In the Cross-Complaint, the Debtor admits he is in default on the loans. *Id.* [Cross-Complaint, ¶ 28]. In sum, the total amount of the liens against the Mc Evoy Property as alleged by the Debtor is $642,500.00.

The Debtor **failed to disclose** the Mc Evoy Property or his debts with regard to this property on his bankruptcy Schedules.

The Debtor first obtained title to the Mc Evoy Property pursuant to a grant deed recorded on June 29, 2015. RJN Ex. 14. In connection therewith, the Debtor obtained a $275,000.00 loan and a $175,000.00 loan secured by recorded deeds of trust that was later reconveyed.

In or about December, 2015, the Debtor transferred title of the Mc Evoy Property to Jimmy Q. Nguyen ("Jimmy") pursuant to a grant deed recorded on December 8, 2015. RJN Ex. 15. Jimmy encumbered the property with a deed of trust to secure the repayment of a $292,500.00 loan ("Jimmy Deed of Trust") recorded on December 8, 2015. RJN Ex. 16.

In or about May, 2016, Jimmy transferred the Mc Evoy Property back to the Debtor pursuant to a grant deed recorded on May 10, 2016. RJN Ex. 17. Thereafter, the Debtor encumbered the property with the following liens:

- Deed of Trust securing a $100,000.00 loan made by Lieu Thi Huynh to the Debtor, and recorded on 05/10/2016 (RJN Ex. 18)
- Deed of Trust securing a $350,000.00 loan made by Mi Suh Kim to the Debtor, and recorded on 12/28/2016 (RJN Ex. 19)

---

[2] It is unclear whether the street is "McEvoy" or "Mc Evoy".

- Deed of Trust securing a $100,000.00 loan made by Lieu Thi Huynh to the Debtor, and recorded on 12/30/2016 (RJN Ex. 20)
- Deed of Trust securing a $150,000.00 loan made by Anh H. Pham to the Debtor, and recorded on 03/06/2017 (RJN Ex. 21)

On or about March 19, 2018, the Debtor recorded a grant deed transferring the Mc Evoy Property to HPQ Development, LLC, a California limited liability company. RJN Ex. 22. That entity was formed on February 5, 2018, and voluntarily cancelled on or about June 13, 2018. RJN Ex. 23 and RJN Ex. 24.

It appears that on or about July 9, 2018, the Mc Evoy Property was foreclosed under the Jimmy Deed of Trust. RJN Ex. 25. However, as a result of the foreclosure, at least three of the Debtor's four loans[3] that were secured by the deeds of trust noted above became unsecured debts. *See Roseleaf Corp. v. Chierighino*, 59 Cal.2d 35, 43 (1963); *Cadlerock Joint Venture v. Lobel*, 206 Cal.App.4th 1531 (2012). Thus, the Debtor's unsecured debts resulting from the foreclosure of the Mc Evoy Property total approximately **$600,000.00**.

The Debtor's Schedule F does not disclose any of these debts, and the Debtor's Statement of Financial Affairs ("SOFA") does not disclose the transfers[4] of the Mc Evoy Property or the foreclosure.

**D.    The 11742 Brownlee, Garden Grove Property**

In addition, the Debtor previously owned real property located at 11742 Brownlee Road, Garden Grove, California ("Brownlee Property").

The Debtor first obtained title to the Brownlee Property on or about August 27, 2015. RJN Ex. 26. Immediately after obtaining title and recording a deed of trust for $322,000.00 (which was later reconveyed), the Debtor recorded a grant deed transferring title to the property to himself and Michael Hoai Bui ("Bui"). RJN Ex. 27.

---

[3] It is unclear whether the $100,000 loan obtained by the Debtor on or about May 10, 2016, would be considered a purchase money loan and therefore barred by California's anti-deficiency statutes.
[4] In fact, the Debtor's Schedules and SOFA do not list any transfers of any real property.

1    On or about March 2, 2016, the Debtor and Bui transferred the Brownlee Property to Dan N. Phan, Huyen L. Nguyen and Han Lai Nguyen (collectively, the "Phans"). RJN Ex. 28.

On or about June 2, 2016, a grant deed was recorded transferring the Brownlee Property from the Phans back to the Debtor. RJN Ex. 29. That same day, the Debtor recorded a deed of trust to secure the repayment of a $395,000.00 loan from Puerto. RJN Ex. 30.

As with the other properties, the Debtor immediately encumbered the Brownlee Property with additional liens, including a deed of trust for a loan made by Huynh. RJN Ex. 31. It appears this deed of trust was never reconveyed.

In or about October, 2017, the Debtor allegedly sold the Brownlee Property to Phong Huy Tran and Quy Nguyen Tran ("Trans") and a grant deed was recorded on October 13, 2017. RJN Ex. 32.

On August 27, 2018, the Trans transferred the Brownlee Property to Tung Thanh Tran and Hoa Kim Nguyen pursuant to a grant deed recorded on that date. RJN Ex. 33.

The Debtor did not disclose the Huynh debt in connection with the Brownlee Property on his Schedules. The Debtor also did not disclose any of the transfers of the Brownlee Property in his SOFA.

It is unclear at this time if the Debtor has interests in other real properties, and if the Debtor has debts in connection with such properties.

In sum, the Debtor's secured debts (both disclosed and undisclosed) with regard to all of the above properties total: **$2,650,296.37** (this includes amounts that would be undersecured or unsecured due to lack of equity in the properties).

The Debtor's *unsecured undisclosed* debts with regard to all of the above properties total: **$600,000.00.**

### E.    The State Court Action

On or about October 13, 2017, the Cohens filed a complaint in the Orange County Superior Court, Case No. 30-2017-00949498-CU-FR-CJC, against, among others, the Debtor and AmeriLink for fraud and professional negligence ("State Court Action"). RJN Ex. 34.

On or about July 9, 2018, Nguyen filed a cross-complaint against the Cohens, AmeriLink, Vince Phan and Fidelity Title. RJN Ex. 13. Nguyen did not name Fidelity Insurance, the owner and holder of the Puerto Loan and DOT. *Id.* On or about July 31, 2018, Nguyen filed an application for a temporary restraining order. *Id.* The next day, the state court issued a TRO and set a hearing for a preliminary injunction on August 31st. Kanesaka Decl., ¶ 8. Nguyen never served Fidelity Insurance or Fidelity Title with notice of the TRO and hearing for a preliminary injunction (in fact, the Debtor has never served either with his Cross-Complaint or FACC). *Id.* However, Fidelity learned of the hearing and filed an opposition. *Id.* at ¶¶ 8-9.

On August 24, 2018, Nguyen filed his FACC. RJN Ex. 12. The state court posted a tentative to deny the Debtor injunctive relief. RJN Ex. 35. The Debtor failed to show up at the August 31st preliminary injunction hearing, and the state court adopted its tentative, denied the Debtor's request for a preliminary injunction, and dissolved the TRO. RJN Ex. 36.

As a result, Fidelity recommenced foreclosure proceedings under the Puerto DOT.

The Debtor **did not** list the State Court Action in his Schedules or SOFA.

### F. The Other State Court Actions

Fidelity Insurance is aware of at least **five** other actions (and/or cross-actions within the actions) filed against, among others, the Debtor, as follows:

- *Tran, et al. v. Phan, et al.*, Orange County Superior Court Case No. 30-2017-00918205 (fraud)
- *Nguyen, et al. v. Phan, et al.*, Orange County Superior Court Case No. 30-2017-00916173 (breach of contract/warranty)
- *ADK Bancorp, Inc. v. Phan, et al.*, Orange County Superior Court Case No. 30-2017-00916183 (breach of contract/warranty)
- *Nguyen v. JVS Development, LLC, et al.*, Orange County Superior Court Case No. 30-2017-00930503 (fraud)
- *WRW Properties, LLC v. JVS Development LLC, et al.*, Orange County Superior Court Case No. 30-2017-00939294 (other real property)

MOTION TO DISMISS BANKRUPTCY CASE WITH PREJUDICE, OR ALTERNATIVELY, WITH A 180 DAY BAR TO REFILING

The verified first amended complaint in Case No. 30-2017-00918205 for fraud is attached to Fidelity Insurance's RJN as Ex. 37.

None of these actions are listed in the Debtor's Schedules or SOFA.

### G. The Bankruptcy Case

On September 12, 2018, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. As noted above, the only secured mortgage listed by the Debtor in his Schedules and SOFA is the Puerto DOT and loan. The Debtor fails to list the Mac Property, the Mc Evoy Property, and the Brownlee Property, and fails to list any debts, creditors, actions (i.e., transfers/foreclosure) relating to the properties. The Debtor woefully underrepresents the amount of his secured and unsecured debts.

With regard to the Debtor's income, it appears to consist of rental income of $4,500.00 per month and operating a business of $9,377.33, for a total of $13,877.33 per month. *See* Schedule D and Form 122C-1. However, the only real property the Debtor lists is the Jerome Property which he claims is his residence. It is therefore unclear as to how the Debtor receives $4,500.00 a month in rental income. The Debtor also fails to include a statement of his business/property income showing "gross receipts, ordinary and necessary business expenses, and the total monthly net income" as required by line item 8 on Schedule I.

The Debtor also omits any expenses for the other secured loans with regard to the Jerome Property. Under the Cohen Loan, the regular monthly payment is **$8,008.94**. Cohen Decl., ¶ 7. Under the Puerto Loan, the full amount of the loan —$567,642.91—must be paid through any plan because the full amount became due and owing on January 1, 2017, and the Debtor listed the Jerome Property as his principal residence. The monthly payment amount of $567,642.91 spread out over 60 months would be approximately **$9,460.70.** Accordingly, simply accounting for the regular monthly payment under the Cohen Loan and the Puerto Loan (and not any debts such as IRS debts totaling $20,500.00 or the $148,916.82 arrears under the Cohen Loan that the Debtor would also need to cure in his Plan), the total approximate monthly payment is **$17,468.70**, and far exceeds the Debtor's alleged monthly income of **$13,877.33**.

1  In addition, per his SOFA, the Debtor's yearly income for the past two years is listed as
2  follows:

| | | |
|---|---|---|
| 3 | 2017 | $     0.00 |
| 4 | 2016 | $15,000.00 (business income) |
| 5 | 2016 | $50,876.00 (rental income) |
| 6 | | $ 6,196.00 (winnings) |
| 7 | | $22,500.00 (taxable interest) |
| 8 | Total: | $94,572.00 |

9  The average monthly amount over 24 months is $3,940.50.

10  Likewise, the Debtor's Plan fails in the same regard. The only secured debts listed by the
11  Debtor are real property taxes of $26,001.39 owed to the County of Orange, and arrears due to
12  Fidelity Insurance of $50,000.00 (the actual "arrears" due under the Puerto Loan is $567,642.91).
13  The Debtor fails to mention the other creditors, debtors, or properties, much less make any
14  provisions for the same.

### III.    THE BANKRUPTCY MUST BE DISMISSED BECAUSE THE DEBTOR IS INELIGIBLE FOR CHAPTER 13

Pursuant to Section 109(e), eligibility for Chapter 13 is limited to individuals with regular income who owed, as of the petition date, "noncontingent, liquidated, unsecured debts of less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200." Eligibility debt limits are strictly construed. *See Soderlund v. Cohen (In re Soderlund)*, 236 B.R. 271, 274 (9th Cir. BAP 1999).

Eligibility is ordinarily determined by examining the debtor's originally filed schedules, checking only to see if those schedules were made in good faith. *Henrichsen v. Scovis (In re Scovis)*, 249 F.3d 975, 982 (9th Cir. 2001). At the same time, the bankruptcy court need not take a mechanical approach to determining eligibility by ignoring readily ascertainable circumstances, such as where a lien is clearly undersecured. *See id.* at 983. The unsecured portion of undersecured debt is ordinarily counted as unsecured for § 109(e) eligibility purposes. *Id.*; *see also, In re Smith*, 435 B.R. at 647-48.

Here, as noted above, the Debtor's secured, undersecured, and unsecured debts relating to the Jerome Property as calculated for eligibility purposes are approximately as follows:

| | | |
|---|---|---|
| Cohen DOT | $ 751,874.46 | (secured) |
| Puerto DOT | $ 567,642.91 | (secured up to $90,255.54; unsecured of $477,387.37) |
| Huynh DOT | $ 200,000.00 | (unsecured) |
| Solar panels | $ 96,779.00 | (listed by the Debtor on Schedule D) (unsecured) |
| **Total secured:** | **$ 842,130.00** | |
| **Total unsecured:** | **$ 774,166.37** | |

With regard to the other properties, the Debtor's debts total approximately as follows:

| | | |
|---|---|---|
| Mac Property | $ 934,000.00 | (secured) |
| Brownlee | $ 100,000.00 | (secured) |
| Mc Evoy | $ 600,000.00 | (unsecured) |

In sum, the Debtor's secured debts as calculated for eligibility purposes total: **$1,876,130.00**. The Debtor's unsecured debts as calculated for eligibility purposes total: **$1,374,166.37**.

Clearly, the Debtor is ineligible for relief under Chapter 13. The case must be dismissed.

## IV. THE BANKRUPTCY SHOULD BE DISMISSED WITH PREJUDICE FOR THE DEBTOR'S BAD FAITH FILING AND FAILURE TO DISCLOSE

Pursuant to Section 1307(c), the Court may dismiss or convert a bankruptcy case for cause. *See also, In re Ells*worth, 455 B.R. 904, 915 (9th Cir. BAP 2011). "Even though § 1307(c) does not explicitly mention it, the bad faith filing of a bankruptcy petition also may constitute "cause" for dismissal … Furthermore, **a bad faith bankruptcy filing may justify dismissal of the case with prejudice**, under § 349." *Id.* (internal citation omitted, emphasis added).

The Ninth Circuit has adopted a "two-step" analysis for dismissal of a Chapter 13 case; first, the court must determine "cause", and second, the court must weigh the alternatives of conversion or dismissal based on the best interests of the creditors and the estate. *In re Nelson*, 343 B.R. 671 (9th Cir. BAP 2006).

In determining the dismissal of a Chapter 13 case due to bad faith in its filing, a bankruptcy court should look at the totality of circumstances and consider the following:

1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner;

2) the debtor's history of filings and dismissals;

3) whether the debtor intended to defeat state court litigation; and

4) whether egregious behavior is present.

*In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999).

"The characteristics of a bad-faith Chapter 13 case include the presence of few creditors, filing on the eve of a foreclosure sale or on the eve of some other litigation event in another court ... a plan that proposes little payment to creditors, a plan that has no hope of confirmation and general lying, cheating or stealing by the debtor." *Ellsworth, supra*, 455 B.R. at 918, n. 11.

Once the court determines that cause to dismiss exists, it must decide what remedial action to take; *i.e.*, what form of dismissal. *Id.* at 922. The court should consider whether some sanction less than dismissal with prejudice would be sufficient such as a bar to refiling for some period of time, although, under appropriate circumstances, the court may dismiss a bankruptcy case with prejudice pursuant to Section 349(a). *Id.* at 921-22.

Here, the evidence overwhelmingly establishes that the Debtor filed the case in bad faith, and continues to act in bad faith.

First, as detailed extensively above, the Debtor failed to disclose the majority of his properties, debts, transfers, and lawsuits in his Schedules and SOFA. This alone warrants dismissal with prejudice.

Second, the Debtor filed the bankruptcy to thwart Fidelity Insurance's attempts to complete foreclosure of the Jerome Property, which is over encumbered. After the Debtor was denied a preliminary injunction in the State Court Action, and the day before Fidelity Insurance's foreclosure sale, the Debtor filed this bankruptcy case. Moreover, the Debtor filed the bankruptcy to delay trial in the State Court Action scheduled for March 4, 2019.

Third, the Debtor's Plan utterly fails to provide for all of his creditors and his debts, and thus, cannot be confirmed. Even if the Debtor included such creditors and debts in his Plan, the Plan is clearly infeasible as the Debtor's sole source of income is from rents collected on real properties which are over encumbered. However, the monthly payments due under all of the secured loans against these properties rents far exceeds any rental income collected from these properties.

Fourth, there are serious allegations of fraud and conversion made against the Debtor, and the Debtor's questionable involvement in numerous real estate transactions resulting in a pump and dump scheme whereby all equity in a property is taken out and the properties are then sold to unsuspecting buyers.

In sum, all of the characteristics of a bad-faith Chapter 13 case are present here. The bankruptcy was filed in bad faith and cause exists to dismiss the bankruptcy.

The last inquiry, having established that cause exists, is whether the dismissal should be with prejudice or if some lesser sanction should apply. *Ellsworth, supra,* 455 B.R. at 921-22.

This case merits dismissal with prejudice. In total, the Debtor failed to disclose in his Schedules, SOFA and/or the Plan, interests or transfers in at least **three** other real properties other than the Jerome Property, **nine** loans that are/were secured by the real properties—two of which relate to the Jerome Property, **two** transfers affecting real property made within one year of the bankruptcy filing, and **one** foreclosure of real property. The Debtor also failed to disclose the **six** lawsuits in which he is a defendant, cross- complainant and/or cross-defendant. The Debtor's actions are clearly egregious and warrant dismissal with prejudice.

In the alternative, the bankruptcy should be dismissed with a 180 day bar to re-filing so that Fidelity Insurance can complete foreclosure of the Jerome Property.

///
///
///
///
///
///

15

## V. CONCLUSION

For the reasons stated above, Fidelity Insurance respectfully requests that the Court enter an order:

1. Dismissing the bankruptcy case with prejudice for cause pursuant to Sections 1307(c) and 349(a);

2. Alternatively, dismissing the bankruptcy case with at least a 180 day bar to re-filing for cause pursuant to Section 1307(c) and 109(g); and

3. For such other and further relief as is just and applicable.

Respectfully submitted,

DATED: October 2, 2018        **FIDELITY NATIONAL LAW GROUP**

By: /s/ *Sheri M. Kanesaka*
        SHERI M. KANESAKA
        Attorneys for Secured Creditor
        FIDELITY NATIONAL TITLE INSURANCE
        COMPANY

MOTION TO DISMISS BANKRUPTCY CASE WITH PREJUDICE, OR ALTERNATIVELY, WITH A 180 DAY BAR TO REFILING

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4 Executive Circle, Suite 270, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): MOTION TO DISMISS BANKRUPTCY CASE WITH PREJUDICE, OR ALTERNATIVELY, WITH A 180 DAY BAR TO REFILING

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/04/2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Amrane (SA) Cohen (TR)    efile@ch13ac.com;
Daniel King    dking@theattorneygroup.com, r44432@notify.bestcase.com;
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 10/04/2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/04/2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Hon. Theodor C. Albert
411 West 4th Street, Courtroom 5B, 5th Floor
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/04/2018 | Christine Hipp | /s/ Christine Hipp |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                    **F 9013-3.1.PROOF.SERVICE**

# Creditors

**Bk Of Amer**
Po Box 982238
El Paso, TX 79998

**County of Orange**
Attn: Orange County Tax Collector
P.O. Box 1438
Santa Ana, CA 92702-1438

**Credit One Bank Na**
Po Box 98875
Las Vegas, NV 89193

**Dsnbvis**
Po Box 8218
Mason, OH 45040

**Fidelity National Title Insurance Compan**
2533 N. 117th Avenue
Omaha, NE 68164

**Genesis Bc/celtic Bank**
268 S State St Ste 300
Salt Lake City, UT 84111

**Hero Financing Program**
1170 W 3rd Street, 2nd Floor
San Bernardino, CA 92410

**IRS**
PO Box 7346
Philadelphia, PA 19101

**Lending Club Corp**
71 Stevenson St Ste 300
San Francisco, CA 94105

**Syncb/sync Bank Luxury**
950 Forrer Blvd
Kettering, OH 45420

**T Mobile/T-Mobile USA Inc**
by American InfoSource as agent
PO Box 248848
Oklahoma City, OK 73124-8848

**Thd/cbna**
Po Box 6497
Sioux Falls, SD 57117

**The Bank of New York Mellon Trustee (See 410)**
c/o Specialized Loan Servicing LLC
8742 Lucent Blvd, Suite 300
Highlands Ranch, Colorado 80129

**Toyota Motor Credit Co**
Po Box 9786
Cedar Rapids, IA 52409

**Wells Fargo**
Po Box 14517
Des Moines, IA 50306